**H.C., a Child with a Disability, by her Parent and Next Friend, L.C., Plaintiff,**

v.

**COLTON–PIERREPONT CENTRAL SCHOOL DISTRICT, Defendant.**

No. 7:07–CV–944.

United States District Court, N.D. New York.

July 29, 2008.

Law Offices of H. Jeffrey Marcus, P.C., of Counsel, Jason H. Sterne, Esq., Williamsville, NY, Joyce B. Berkowitz, Esq., Fairport, NY, for Plaintiff.

Hogan, Sarzynski, Lynch, Surowka & Dewind, L.L.P., of Counsel, Edward J. Sarzynski, Esq., Johnson City, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

Plaintiff L.C. ("plaintiff"), on behalf of her child H.C. ("child" or "H.C."), a minor with a disability, brings this action against defendant Colton–Pierrepont Central School District ("defendant" or "District") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. §§ 1400–87 (West 2000 & Supp.2008), section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701–96l (West 2000), and Article 89 of the New York Education Law, N.Y. Educ. Law §§ 4401–10–b (McKinney 2001). Specifically, plaintiff appeals an administrative decision of the New York Education Department's State Review Officer ("SRO") under IDEA § 615(i)(2), 20 U.S.C.A. § 1415(i)(2), on three grounds: (1) the SRO erred in finding that H.C. was given a free appropriate public education ("FAPE") under the IDEA; (2) the SRO erred in finding that home-schooled students are not entitled to public special education services under the IDEA and New York Education Law; and (3) the SRO erred in finding that he did not have the authority to enforce a settlement agreement between the parties.

Defendant moves for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff opposes. Plaintiff cross-moves for summary judgment under Rule 56. Defendant opposes. Oral argument was heard on June 18, 2008, in Utica, New York. Decision was reserved.

## II. FACTS

H.C., born in 2000, suffers from arthrogryposis multiplex congenital, a rare disorder characterized by non-progressive joint contractures and muscle weakness caused by fatty tissue taking over the muscle. Arthrogryposis may lead to bone overdevelopment or osteoporosis because abnormal muscle stress creates abnormal bone stress. The condition typically is treated with physical therapy ("PT"), occupational therapy ("OT"), splints, and surgery. H.C. also suffers from a latex allergy characterized by a rash and breathing problems.

Due to her arthrogryposis, H.C. is eligible for the District's special education services. Specifically, she receives OT services to improve her upper extremity and hand strength, movement, coordination and object/utensil manipulation, visual-perceptual-motor skills for written work, and to further develop self-care tasks. She

receives PT services to develop gross motor skills, monitor the fit of ankle foot orthosis, develop self-stretching and strengthening programs for functional activities, and monitor rehabilitation after surgery.

In November 2005, the District's Committee on Special Education ("CSE") convened to discuss H.C.'s individualized education program ("IEP"), a written statement for each child with a disability that, among other things, sets forth in detail his or her special education program. See 20 U.S.C.A. § 1414(d)(1)(A). Plaintiff, who was present at the November meeting, and the CSE were unable to agree on the appropriate level of OT and PT services H.C. should receive. As a result, plaintiff requested an impartial hearing, and the CSE held a resolution session later that month as per the IDEA.[1] The parties entered into a written settlement agreement on May 19, 2006,[2] which stated, in relevant part, that (1) the District would provide and install assistive technology equipment and software for H.C. by certain deadlines, and (2) the District would note on H.C.'s next IEP that she is allergic to latex and must be in a latex-free environment.

In June 2006, the CSE convened to develop H.C.'s 2006–07 IEP. It recommended a reduction in both the frequency and duration of her services. Plaintiff objected to the recommendation and again initiated an impartial hearing.

In October 2006, after three days of hearings, an Impartial Hearing Officer ("IHO") found that plaintiff made a prima facie case for maintaining the same frequency and duration of PT and OT services and that the District failed to prove a reduction was appropriate. As a result, the IHO remanded the case to the CSE to adjust H.C.'s 2006–07 IEP in accordance with his findings. It should be noted, however, that the IHO did not find that the 2006–07 IEP denied H.C. a "free appropriate public education" ("FAPE") under the IDEA.[3] The IHO also declined to exercise jurisdiction over the May 2006 settlement agreement. Both parties appealed.

In June 2007, the SRO found that plaintiff failed to establish that the proposed 2006–07 IEP denied H.C. a FAPE under the IDEA because the recommended frequency and duration of services, although slightly reduced from the previous IEP, were still "reasonably calculated to provide educational benefits." (Welch Aff. Ex. 2 at 1.) Also, the SRO concurred with the IHO's conclusion that he did not have jurisdiction over the May 2006 settlement agreement. Finally, the SRO found, despite the fact that the parties neither raised nor briefed the issue, that homeschooled students are not entitled to receive public special education services be-

---

**1.** "Prior to the opportunity for an impartial due process hearing ... the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team ... within 15 days of receiving notice of the parent's complaint...." 20 U.S.C.A. § 1415(f)(1)(B)(i)(I) (West Supp. 2008).

**2.** "In the case that a resolution is reached to resolve the complaint ... the parties shall execute a legally binding agreement...." 20 U.S.C.A. § 1415(f)(1)(B)(iii) (West Supp. 2008).

**3.** A FAPE is defined as

> special education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program....

20 U.S.C.A. 1401(9) (West Supp.2008).

cause they are not considered enrolled in private elementary or secondary schools under New York law.

In September 2007, plaintiff filed this action appealing the SRO's decision.

Subsequent to oral argument, on July 7, 2008, Governor Paterson signed into law a bill that recognizes home-schooled students as enrolled in private elementary and secondary schools and "authorizes school districts to provide special education programs and services to [those] students...." Assemb. B. A11463, 2008 Leg. (N.Y.2008). Judicial notice is taken of this new law.

### III. *STANDARD OF REVIEW*

■ While "IDEA actions in federal court generally are resolved by examination of the administrative record in a summary judgment procedural posture[,] ... a disputed issue of material fact will not defeat the motion." *J.R. v. Bd. of Educ. of the City of Rye Sch. Dist.*, 345 F.Supp.2d 386, 394 (S.D.N.Y.2004). In short, federal courts conduct an independent judicial review of IDEA actions—which, in effect, are administrative appeals—based on the preponderance of the evidence. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191–92 (2d Cir.2005). The Supreme Court, however, has made clear that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051. Federal courts must give "due weight" to administrative proceedings, *id.*, and be mindful that they "lack the 'specialized knowledge and expe-

rience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Id.* at 208, 102 S.Ct. at 3052 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973)).

### IV. *DISCUSSION*

To reiterate, plaintiff appeals the SRO's decision claiming that he erred in finding (1) that H.C. was given a FAPE under the IDEA, (2) that home-schooled students are not entitled to public special education services under the IDEA and New York Education Law, and (3) that the IHO did not have the authority to enforce the May 2006 settlement agreement. The plaintiff's grounds for appeal will be addressed in reverse order.

■ The IDEA requires that state and local educational agencies provide parents with certain procedural safeguards in their efforts to secure appropriate educational services for their children with disabilities. *See* 20 U.S.C.A. § 1415(a). One such procedural safeguard is the opportunity "to present a complaint—with respect to *any matter relating to* the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child ...." § 1415(b)(6)(A) (West Supp.2008) (emphasis added). Thus, parents of children with disabilities shall be given the opportunity to present a complaint with respect to pre-hearing written settlement agreements described at § 1415(f)(1)(B)(iii) (West Supp.2008), so long as such settlement agreements relate to the identification, evaluation, or educational placement of the child, or the provision of a FAPE. Put another way, impartial due process hearing officers, such as the IHO in this case, generally have the authority to enforce settlement agreements related to the provision of edu-

cational services for children with disabilities.

In this case, the IHO found that he did not have the authority to enforce the settlement agreement and, thus, did not consider its terms in assessing the propriety of H.C.'s 2006–07 IEP. The SRO concurred that the IHO did not have authority to enforce the settlement agreement. However, provisions in the May 2006 settlement agreement were sufficiently related to plaintiff's 2006–07 IEP such that the IHO not only had the authority to enforce the settlement agreement, but had a duty to do so.

For example, in the settlement agreement, the District agreed to provide and install assistive technology equipment and software by certain deadlines, and agreed that H.C. must be in a latex-free environment. The IHO should have considered such terms in assessing the propriety of the 2006–07 IEP, and, among other things, whether it comports with the IDEA, New York Education Law, and the settlement agreement itself.

Plaintiff's second ground for appeal—that the SRO erred in finding that home-schooled students are not entitled to special education services—need not be addressed in light of the recent passage of New York State Assembly Bill A11463.[4]

■ Similarly, plaintiff's first ground for appeal—that the SRO erred in finding

H.C. was given a FAPE under the IDEA—need not be addressed because such a determination must be made by the IHO with the benefit of all relevant evidence, including the terms of the settlement agreement and consideration of the newly passed law.

In sum, the SRO erred in finding that the IHO did not have the authority to enforce the May 2006 settlement agreement. Moreover, the recent passage of New York State Assembly Bill A11463 calls for a reevaluation of H.C.'s IEP. The SRO's decision, therefore, will be vacated and this matter will be remanded to the IHO for a new hearing so that the terms of the May 2006 settlement agreement, implications of New York State Assembly Bill A11463, and any additional relevant evidence may be properly considered. The District remains bound by their pendency obligations under IDEA § 615(j), 20 U.S.C.A. § 1415(j), until all proceedings have been completed.

## V. *CONCLUSION*

Accordingly, it is

ORDERED that

1. Defendant Colton–Pierrepont Central School District's motion for summary judgment is DENIED;

2. Plaintiff's cross-motion for summary judgment is DENIED;

3. The SRO's decision is VACATED;

---

4. Even without the new law, the SRO deprived both parties of due process and exceeded the scope of his authority by deciding that issue. The SRO deprived both parties of due process because he failed to inform them that he intended to rule on the rights of home-schooled students to receive special education services—an issue that neither party raised nor briefed. *See* U.S. Const. amend. XIV, § 1 ("No State shall ... deprive any person of life, liberty, or property, without due process of law."); *see also Mathews v. Eldrige*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) ("[D]ue process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks omitted)). The SRO also exceeded the scope of his authority because "[t]he decision of the State Review Officer shall be based solely upon the record before the State Review Officer...." N.Y. Comp.Codes R. & Regs. tit. 8, § 279.12(a) (2008). Neither party mentioned or submitted evidence concerning the ability of home-schooled students to receive special education services.

4. This matter is REMANDED to the IHO for a new hearing in accordance with this decision; and

5. The complaint is DISMISSED, without prejudice.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.